UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAUL BLACK,

        **Plaintiff,**                      **Case No. 2:10-cv-0003**
                                            **JUDGE GREGORY L. FROST**
        **v.**                            **Magistrate Judge E. A. Preston Deavers**

USHER TRANSPORT,

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary

judgment (ECF No. 47), Plaintiff's memorandum in opposition (ECF No. 50), and Defendant's

reply memorandum (ECF No. 51).  For the reasons that follow, the Court **GRANTS in part and**

**DENIES in part** Defendant's motion.

### I.  Background

Plaintiff, Paul Black, resides in Groveport, Ohio.  (ECF No. 3, at ¶ 2.)  Black worked for

Defendant, Usher Transport ("Usher"), as a truck driver until he was fired in April 2007.  (*Id.* at

¶¶ 1, 2.)

After Usher terminated Black, he applied for a truck driver position with Landstar in

2009 and he was required to sign multiple forms in the application.  (ECF No. 30, at 80:8-11.)

Black permitted Landstar to contact his previous employers regarding his employment history.

(ECF No. 30, at Ex. C.)  In approximately mid-August 2009, Landstar sent a Driver Employment

Verification Form ("Form") to obtain Black's previous employment information from Usher.

Missy Powers, an Usher representative, received and completed the Form based on information

from Black's personnel file with Usher.  (ECF No. 29-4, at ¶¶ 2, 3.)  Mike Baker, Vice President

of Safety for Usher, testified that a previous employee's personnel file contains information

about that previous employee's employment history with Usher.  (ECF No. 46, at 15:3-8.)

After Usher returned the completed Form to Landstar, Landstar decided not to hire Black.

(ECF. No. 3, at ¶ 3.)  Black asserts that the Form contains three errors regarding his previous

employment with Usher: that he had been arrested while on the job, that he had had an

unauthorized passenger in his truck, and that he had tested positive for a controlled substance in

the last three years.  (ECF No. 30, at 96:8-18.)

Black filed suit against Usher alleging defamation.  On October 26, 2010, Usher filed its

motion for summary judgment.  That motion is now ripe for review.

## II.  Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial

burden of presenting parts of the record which illustrate that no genuine issue of material fact

exists.  *Havensure, L.L.C., v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010)

(citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986)).  The Court may grant the motion if the nonmoving party fails

to establish a sufficient showing of the existence of a required element that the nonmoving party

has the burden of proving at trial.  *Novak v. MetroHealth Med. Ctr.,* 503 F.3d 572, 577 (6th Cir.

2007) (citing *Celotex Corp.*, 477 U.S. at 322).

The Court must view the factual evidence and draw reasonable inferences in a light most

favorable to the nonmoving party. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir.

2007) (citing *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006)); *Ctr. for Bio-Ethical Reform

Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A nonmoving party relying on mere

allegations or denials of the moving party's pleadings is not sufficient; rather, the nonmoving

party must establish specific facts showing there is a genuine issue of material fact. *Havensure*,

595 F.3d at 315 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 354 (6th Cir. 2009)). A

genuine issue of material fact exists if the outcome could be affected by a disputed fact or if the

evidence is such that " 'a reasonable jury could return a verdict for the nonmoving party.' "

*Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006) (quoting *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, the central issue is " 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law.' " *Knox v. Neaton Auto Prods. Mfg. Inc.*, 375 F.3d

451, 456 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Discussion

**A. Defamation Claim**

Under Ohio law, "[d]efamation is a false publication that injures a person's reputation,

exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in

his trade or business." *Sweitzer v. Outlet Commc'ns., Inc.*, 133 Ohio App. 3d 102, 108, 726

N.E.2d 1084, 1088 (Ohio Ct. App. 1999) (citing *Matalka v. Lagemann*, 21 Ohio App. 3d 134,

136, 486 N.E.2d 1220, 1222 (Ohio Ct. App. 1985)). Usher asserts that it did not defame Black

and that it is entitled to summary judgment because Black's defamation claim is barred by 49

C.F.R. §391.23, Ohio Revised Code § 4113.71, the doctrine of qualified privilege, and a

purported waiver of liability signed by Black.

The Court first focuses on Ohio Revised Code § 4113.71, which provides:

> (B) An employer who is requested by an employee or a prospective employer of an employee to disclose to a prospective employer of that employee information pertaining to the job performance of that employee for the employer and who discloses the requested information to the prospective employer is not liable in damages in a civil action to that employee, the prospective employer, or any other person for any harm sustained as a proximate result of making the disclosure or of any information disclosed, unless the plaintiff in a civil action establishes, either or both of the following:

> (1) By a preponderance of the evidence that the employer disclosed particular information with the knowledge that it was false, with the deliberate intent to mislead the prospective employer or another person, in bad faith, or with malicious purpose;

Ohio Rev. Code § 4113.71.

Usher argues that Ohio Revised Code § 4113.71(B) bars Black's defamation claim

against Usher because "[t]he mere existence of the Form, without more . . . does not provide any

evidence of the level of intent or mental state of Missy Powers, Michael Baker, or anyone else at

Usher." (ECF No. 47, at 13.)  Black, however, asserts that Ohio Revised Code §4113.71 is

inapplicable and that he only needs to prove that Usher "possibly knew" the information was

wrong or that the information submitted to Landstar was "arguably" made with reckless

disregard as to its truth.  (ECF No. 50, at 14.)  To support his position, Black contends that

Baker's failure to produce documentation of Black's alleged arrest and failure to produce the

identification of his sources from his investigation implies that Baker falsely indicated that Black

was arrested.  (*Id*., at 13.)  Furthermore, Black asserts the statute is inapplicable because Powers

blatantly disregarded information in Black's personnel file when she was filling out the Form.

(*Id.*, at 13.)

The Court finds that Ohio Revised Code § 4113.71(B) applies and is dispositive of Black's state law claim.  Black has failed to produce evidence that could prove Usher disclosed particular information to Landstar "with the knowledge that it was false, with the deliberate intent to mislead the prospective employer or another person, in bad faith, or with malicious purpose."  Ohio Rev. Code § 4113.71(B)(1).  As a result of the application of Ohio Revised Code § 4113.71(B)(1), this Court need not reach the other defenses presented by Usher.

### 1.  Knowledge of falsity

The parties dispute whether three statements on the Form were false.  First, Powers's indication that Black had tested positive for a controlled substance within the last three years was clearly false because Black's personnel file contained an "inconclusive" test result, not a "positive" test result.  (ECF No. 50, at Ex. C.)  Second, Black contends that he was not arrested and submitted as evidence an arrest document, "Black's Franklin County Arrest Record," which does not indicate that he was arrested during the time period he was employed by Usher.  (ECF No. 50, at Ex. B.)  Usher submitted Baker's deposition testimony to support its contention that Black was arrested during his Usher employment.  Baker testified that he received a telephone call informing him that Black's truck was stranded at a Marathon truck stop because Black was arrested at Marathon for pulling a knife on another driver at a nearby Pilot truck stop.  (ECF No. 46, at 10:20-11:6.)  Baker asserts that he investigated the incident by contacting a Pilot employee and the other driver involved, which both confirmed that an altercation involving Black had occurred.  (ECF No. 46, at 11:7-13:1.)  After receiving information from three sources confirming Black had been arrested that day, Baker reported the incident in Black's personnel

file.  (ECF No. 47, at 11.)  Third, Baker testified that his investigation revealed that Black had an

unauthorized passenger in his truck.  (ECF No. 46, at 19:25-20:8.)  Black denies Usher's

assertion that he had an unauthorized passenger in his truck and contends that the assertion is

false.  (ECF No. 30, at 96:8-15.)

With regard to the drug test, it is undisputed that Powers reported false information.

Powers admitted that the indication about a positive drug test within the last three years was a

"mistake on her part."  (ECF No. 49, at 9:15-22.)  With regard to the arrest and the unauthorized

passenger, it is unclear whether the information was accurate.  The question before the Court,

however, is whether Usher *knew* it was reporting false information to Landstar and not whether

the information was actually false.  Thus, even if Usher did submit false information about Black

to Landstar, Black must present evidence of a factual dispute regarding whether Usher knew it

was providing false information to Landstar.  This Black has not done.

Black's submission of his arrest record does not exhibit Usher's intent to purposely

provide false information about Black to Landstar.  Baker's investigation may have resulted in

an incorrect conclusion, but Black has failed to produce evidence that could permit a reasonable

juror to conclude that Baker knew that the conclusion was incorrect, *i.e.*, that Black had not been

arrested.  Furthermore, Black has failed to point to any evidence that Powers intended to report

false information in the Form submitted to Landstar.  Powers admits she incorrectly reported that

Black had a positive drug test; however, the Court has not been presented with any evidence that

proves Powers was anything but negligent in her reporting to Landstar.  The mere occurrence of

a mistake does not permit an inference of nefarious intent without some evidence suggesting

such conscious misbehavior.  *See McKenna v. The Mansfield Leland Hotel Co.*, 55 Ohio App.

163, 165-66, 9 N.E.2d 166, 168 (1936) (a statement will not be considered defamatory if the person answering the inquiry about a former employee is given honestly, even if the statement is incorrect).  Black's own testimony further implies that Powers lacked any intention to report false employment information about Black because Black and Powers have never met.  Therefore, Black has failed to satisfy his burden of pointing to a genuine issue of material fact as to whether Usher knew it was providing false information to Landstar.

### 2.  Bad faith

It is undisputed that Usher submitted some incorrect information in the Form about Black's previous employment with Usher, *i.e.*, the drug test.  Black also argues that he was not arrested.  As the Court just explained, it is not apparent from the evidence presented whether Black was or was not arrested.  The evidence shows that he was handcuffed and placed in a police car and that his truck was abandoned at the Pilot truck stop.  Whether the incident led to an actual arrest, however, is not clear.  Nevertheless, Black failed to establish that Baker's investigation or Powers's mistake constituted bad faith.  This district has stated that

> [t]he Ohio Supreme Court has defined "bad faith" to require more than negligence or bad judgment.  *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148 (1962) (syllabus).  Rather, "bad faith" requires "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*.

*Woods v. Miamisburg City Schs.*, 254 F. Supp. 2d 868, 881 (S.D. Ohio 2003).  Baker conducted an investigation that resulted in three separate disinterested parties confirming to him that Black was arrested for pulling a knife on another driver.  Baker may have been wrong about Black's alleged arrest; however, Black has not produced evidence that could prove Baker acted with bad intentions or that he was dishonest when reporting his investigation in Black's personnel file.

Indeed, Baker's investigation of the incident evinces an intent to fairly report what had happened

at the Pilot truck stop.  The mere submission that Black had been arrested does not suggest that

Baker acted in bad faith because the arrest record does not establish any sort of intentional

wrongdoing on the part of Baker.  The record speaks to what did or did not occur, but it cannot

logically cast light on why Baker did what he did or why he believed what he believed.  And,

with regard to Powers, Black has submitted no evidence to establish any intentional wrongdoing

on her part.  Powers's negligence does not amount to bad faith.  *Woods*, 254 F. Supp. 2d at 881

(citing *Slater*, 174 Ohio St. 148 (syllabus)) (negligent behavior does not constitute bad faith).

Thus, Black has failed to present a genuine issue of material fact as to whether Usher acted in

bad faith when it submitted the Form to Landstar.

### 3. Malicious purpose

Next, the Court must decide whether there is a genuine issue of material fact as to

whether Usher acted with a malicious purpose when Usher submitted Black's employment

information to Landstar.  Black argues that Ohio Revised Code § 4113.71 is inapplicable

because Usher's multiple mistakes on the Form sent to Landstar constitute sufficient evidence to

prove that Usher acted maliciously and with reckless disregard when Usher completed the Form.

(ECF No. 50, at 12-13.)  Black also argues that actual malice and reckless disregard is shown by

the "dubious nature of Defendant's sources" and the "inherent improbability of Defendant's

story."  (ECF No. 50 at 14) (relying on *LaBarge v. Werner Enter.*, 2008 U.S. Dist. LEXIS

116521, at *17 (S.D. Ohio July 10, 2008)).

To determine whether Usher acted with malicious purpose, Ohio courts regularly find

that malicious purpose and actual malice are indistinguishably defined as when "a defendant

makes a statement with the knowledge that the statement is false or with reckless disregard of whether it was false." *Clanin v. North Am. Bulk Trans., Inc.*, No. C-3-01-488, 2003 U.S. Dist. LEXIS 4156, at \*11 (S.D. Ohio Jan. 22, 2003) (citing *Smith v. Klein*, 23 Ohio App. 3d 146, 148, 492 N.E.2d 852, 855 (Ohio Ct. App. 1985); *Costanzo v. Gaul*, 62 Ohio St. 2d 106, 111, 403 N.E.2d 979, 983 (Ohio Ct. App. 1980)); *see also LaBarge*, 2008 U.S. Dist. LEXIS 116521, at \*21 (holding that there is no evidence that malicious purpose means anything other than actual malice).  Thus, malicious purpose can be shown with evidence of knowledge of falsity or reckless disregard as to truth.  Under Ohio law, "[r]eckless conduct is not measured by whether a reasonably prudent man . . . would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  A *& B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 13, 65 N.E.2d 1283, 1293-94 (1995) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  Reckless disregard exists when a defendant fabricates a story or is simply the product of his imagination.  *LaBarge*, 2008 U.S. Dist. LEXIS 116521, at \*14 (citing *A & B-Abell*, 73 Ohio St. 3d at 13, 651 N.E.2d at 1283).  Furthermore, mere negligence is not sufficient to establish actual malice.  *A & B-Abell*, 73 Ohio St. 3d at 13, 651 N.E.2d at 1283 (quoting *Dale v. Ohio Civ. Serv. Emp. Assn.*, 57 Ohio St. 3d 112, 118, 567 N.E.2d 253, 258 (1991)).

In the instant action, Black has failed to produce evidence to show that Usher acted with a malicious purpose when it submitted Black's employment information to Landstar.  There is no evidence before the Court that suggests Baker purposely conveyed false information in Black's personnel file because Baker's investigation led him to believe that Black had actually been

arrested.  Baker testified in his deposition that he was informed during his investigation that

> Mr. Black was gone. His truck was there at the Marathon rack. He
> left there in a police car. As far as I'm concerned, when they take you
> in a police car, you're on your way to jail, you know. And that's
> exactly why we did what we did.

(ECF No. 46, at 13:19-23.)  Baker's conclusion here is not inherently improbable.  Indeed, just

the opposite.

Furthermore, Black has failed to point to any evidence suggesting that Baker fabricated

his investigation results to constitute reckless disregard.  Baker's failure to identify his sources

and the information he received from those sources does not establish reckless disregard.  After

Baker received a telephone call informing him that Black had been arrested, Baker initiated the

investigation by contacting witnesses who verified that Black was arrested for pulling a knife on

another driver.  The Court does not find these sources dubious in nature.  Finally, Baker's

investigation was more than an "unverified telephone call" and cannot be considered reckless

disregard because individuals confirmed the same information to him: Black had been arrested.

Baker was not required to pursue every possible avenue to discover whether Black had been

arrested.  Therefore, Baker's investigation cannot be described as reckless because the similar

information received from all three sources reasonably led Baker to believe that Black had been

arrested and that he had an unauthorized passenger in his truck.

With regard to Powers, Black failed to show that she knew that she was submitting false

information to Landstar or that she acted with reckless disregard as to the truth of the

information submitted.  Powers may have been negligent in completing the Form, but her

negligence does not establish that she had any doubts as to the truth of Black's information she

submitted in the Form to Landstar.  *A & B-Abell*, 73 Ohio St. 3d at 13. 651 N.E.2d at 1292

("Mere negligence is not enough to establish actual malice") (quoting *Dale*, 57 Ohio St. 3d at 118, 567 N.E.2d at 258).  Black has not presented any evidence suggesting that Ms. Powers's mistake was anything other negligence on her part when she was filling out the Form.

### 4.  Deliberate intent to mislead

Last, the Court must next decide whether Black has raised a genuine issue of material fact as to whether Usher deliberately intended to mislead Landstar when Usher submitted Black's employment information to Landstar.  Similar to his failure with regard to knowledge of falsity, bad faith, and malicious purpose, Black did not present any evidence that Usher deliberately intended to mislead Landstar with the information that was reported on the Form.  The form itself, three disinterested parties confirming an arrest, and a mistake, as explained above, do not indicate any type of deliberate conduct on Usher's behalf.  Black has therefore failed to present a genuine issue of material fact as to whether Usher deliberately intended to mislead Landstar.

### 5.  Summary

The Court concludes that Black has failed to present evidence that Usher disclosed particular information about Black to Landstar with the knowledge that it was false, with the deliberate intent to mislead Landstar, in bad faith, or with malicious purpose.  Therefore, the Court finds that Ohio Revised Code § 4113.71(B) bars Black's defamation claim.

Having recognized the state statute as dispositive, the Court need not and does not discuss Usher's alternative grounds for summary judgment.

## B.  Attorney's fees and costs

Ohio Revised Code § 4113.71© permits the Court to award attorney's fees and costs to a

prevailing defendant if the Court finds by a preponderance of evidence that a plaintiff's lawsuit

constitutes frivolous conduct.  *Id.*  When deciding whether a plaintiff's conduct is frivolous, this

Court refers to Ohio Revised Code § 2323.51(A).  Ohio Rev. Code § 4113.71©.  A lawsuit can

be considered frivolous conduct when the lawsuit is "not warranted under existing law, cannot

be supported by a good faith argument for an extension, modification, or reversal of existing law,

or cannot be supported by a good faith argument for the establishment of new law.  *Coburn v.*

*Auto-Owners Ins., Co.*, 189 Ohio App. 3d 322, 342, 938 N.E.2d 400, 416 (Ohio Ct. App. 2010)

(citing Ohio Rev. Code § 2323.51(A)(2)(a)(ii)).  Furthermore, frivolous conduct occurs when

allegations or factual contentions have no evidentiary support or are not likely to have

evidentiary support after reasonable investigation or discovery.  Ohio Rev. Code §

2323.51(A)(2)(a)(iii).

Usher argues that it is entitled to attorney's fees and costs because Black's defamation

suit is frivolous.  (ECF No. 47, at 16.)  Usher contends that Black failed to present evidence that

Usher acted with actual malice.  Therefore, Black's lawsuit constitutes frivolous conduct that

enables Usher to obtain attorney's fees and costs from Black.  (ECF No. 47, at 16.)  Furthermore,

Usher asserts that attorney's fees are appropriate because Black expressly waived his right to

damages when he signed a release.  (ECF No. 47, at 16.)  Black disagrees with Usher's

contentions and argues that he produced "ample support from existing law substantiating

Plaintiff's arguments/claims."  (ECF No. 50, at 18.)  He reasons that Usher should not be

awarded attorney's fees and costs because he provided documentary evidence as well as

deposition testimony to support his claims.  (ECF No. 50, at 18.)

The Court declines to exercise its discretion to award Usher reasonable attorney's fees

and costs in the present case.  Although Black failed to present sufficient evidence that could prove Usher acted with actual malice when Usher submitted the Form to Landstar, the Court cannot accept Usher's assertion that Black's failure to prove that Usher acted with actual malice equates to frivolous conduct.  *See Arrow Uniform Rental, L.P., v. Longazel*, No. 91536, 2009 Ohio App. LEXIS 721 at *24 (Ohio Ct. App. Feb. 26, 2009) (denying attorney's fees and court costs to the defendant because the plaintiff's mere inability to withstand summary judgment did not constitute frivolous conduct).  The parties may dispute the validity of the waiver, but the Court does not need to decide the validity issue because it has no effect on Court's determination of Black's defamation claim.  The Court does not find that Black's actions constituted frivolous conduct.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Usher's motion for summary judgment.  (ECF No. 47.)  Specifically, the Court **GRANTS** Usher's motion as it relates to Black's defamation claim and **DENIES** Usher's motion as it relates to the request for attorney's fees and costs pursuant to Ohio Revised Code § 4113.71©.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**